UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARTY C. STACY,

    Petitioner,

        v.            Case No. 15-cv-01393-JPG

UNITED STATES OF AMERICA,

    Respondent.

**MEMORANDUM AND ORDER**

This matter comes before the Court on petitioner Marty Stacy's Motion (Doc. 1) to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255.  The government filed a timely response (Doc. 11) and the petitioner filed a reply (Doc. 14).  Petitioner also filed an amendment (Doc. 2) and an amended Ground Nine (Doc. 5).  For the following reasons, Petitioner's motion is denied.

    **1. Background.**

On June 25, 2013, Marty C. Stacy was found guilty at trial of four counts of possession of pseudoephedrine knowing it would be used to manufacture methamphetamine and one count of conspiracy to manufacture methamphetamine.  He was sentence on November 1, 2013, to a term of imprisonment of 336 months on the conspiracy charge and 240 months on each of the possession charges – all counts to run concurrent with each other.  He was further sentenced to eight years of supervised release, a fine of $250.00, and a special assessment of $500.00.  *See United States v. Stacy, 12-cr-40094*, Docs. 90 & 110.

Petitioner appealed his conviction and sentence which were affirmed by the United States Court of Appeals for the Seventh Circuit on October 20, 2014. He then filed a petition for *en banc* rehearing which was denied on December 24, 2014. *See United States of America v. Stacy*, 769 F.2d 969 (7th Cir. 2014).

He now brings this 28 U.S.C. § 2255 petition alleging the following issues:

1. Relevant conduct and unjust sentence in that the original indictment gave a time frame of 8-14-2010 to 5-30-2012 and the superseding indictment had four specific dates. As he was found guilty of the charges in the superseding indictment, the amount of pseudoephedrine should have been limited to those specific four days.

2. Ineffective assistance of appellate counsel, prosecutorial misconduct, in that his counsel did not strike juror Gordon even though the Judge acknowledged and notified the parties that he knew juror Gordon and appellate counsel refused to raise issue on appeal.

3. Prosecutorial misconduct, plain error, in that the Prosecutor's closing arguments included instructions as to reasonable doubt.

4. Denial of due process, in that opening and closing arguments were not included in the transcripts for the record of appeal.

5. Ineffective assistance of counsel against Burton H. Shostak for failing to pursue a speedy trial resulting in the government filing a superseding indictment.

6. Ineffective assistance of counsel against Ronald E. Jenkins for actions pretrial and at trial.

7. Ineffective assistance of counsel against Peter Henderson, appellate counsel, for failing to raise the issues Petitioner requested be raised on appeal and proceeding with an appeal without a complete transcript.

8. Ineffective assistance of counsel against Ronald E. Jenkins for failing to raise a chain of custody issue in the Motion to Suppress Evidence.

9. Ineffective assistance of counsel against Ronald E. Jenkins for failing to withdraw as counsel after Petitioner requested him to withdraw.

The Petitioner's Amendment was filed four days prior to this Court's Memorandum and Order (Doc. 3) and Petitioner's Amended Ground Nine was filed approximately two weeks after the Memorandum and Order. The Memorandum and Order directed the parties to refer to the claims as outlined in the memorandum. However, in these additional documents, petitioner identified a new Ground Nine – Inadmissible evidence denying the right to a fair trial, confrontation, and due process. As such, Ground Nine as identified in the Court's Memorandum is different from the Ground Nine identified by the petitioner. Therefore, the relevant portions of the Amendment Ground Nine have been address within the appropriate areas of the issues identified in the Court's Memorandum and Order.

**2. Standard.**

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting

*Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013)).  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).   No hearing was conducted in this matter as the files and records demonstrate that the petitioner is entitled to no relief.

Further, a defendant cannot raise in a § 2255 motion constitutional issues that he could have but did not raise in a direct appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  Neither is a § 2255 motion necessarily a second chance at a successful appeal.  *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).  Applying the "law of the case" doctrine, the Court may refuse to consider issues in a § 2255 motion that a defendant raised on direct appeal where there are no changed circumstances of fact or law.  *Id.*; *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005); *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992).

With regard to the petitioner's allegations of ineffective assistance of counsel, the Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).  A party claiming ineffective assistance of counsel bears the burden of showing (1) that counsel's performance fell below objective standards for reasonably effective representation

and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 2431 (2010); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt*, 574 F.3d at 458. The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland*, 466 U.S. at 689. The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

The Court must liberally construe *pro se* pleadings.  See *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998).   However, Courts are not obliged to craft arguments or perform necessary legal research for *pro se* litigants, because even *pro se* litigants must put forward some legal argument in support of their contentions.  See *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990); *Mathis v. New York Life Ins.*, 133 F.3d 546, 548 (7th Cir.1998).

   **3. Analysis.**

   (1) Relevant conduct and unjust sentence in that the original indictment gave a time frame of 8-14-2010 to 5-30-2012 and the superseding indictment had four specific dates.   As he was found guilty of the charges in the superseding indictment, the amount of pseudoephedrine should have been limited to those specific four days.

This issue was addressed at sentencing by petitioner's counsel and the Court.  See *Sentencing Transcript*, Doc. 125, 12-cr-40094-JPG.   Regardless of the dates in the indictment, "[f]or purposes of calculating drug quantity, the offense level is determined by the amount of drugs attributable to the defendant during his entire course of relevant conduct, 'not simply the amount associated with the particular offenses of conviction.'" *United States v. Austin,* 806 F.3d 425, 433 (7th Cir. 2015) quoting *United States v. Redmond,* 667 F.3d 863, 875 (7th Cir.2012).   As such, the calculation of the drug quantity for sentencing was not in violation of the Constitution or laws of the United States even if it exceeded the specific dates indicated within the superseding indictment.

   (2) Ineffective assistance counsel, prosecutorial misconduct, in that his trial counsel did not strike juror Gordon even though the Judge acknowledged and notified the parties that he knew juror Gordon and appellate counsel refused to raise issue on appeal.

An attorney's trial strategies are a matter of professional judgment. Specifically, "[d]ecisions on selection of a jury are among the many entrusted to counsel rather than to defendants personally." *United States v. Boyd*, 86 F.3d 719, 723 (7th Cir. 1996). In this case, petitioner states that, "the government should have struck Gordon to remove even the appearance of impropriety." (Doc. 1, pg 19). Petitioner gives no basis for any actual impropriety or prejudice with regard to juror Gordon. He instead states that, "I never claimed him [Gordon] to be biased" – only that his trial was "fundamentally unfair" because his counsel wanted, "to please the prosecution and the court." (Doc. 14, pg 3). Petitioner has not demonstrated that his trial counsel's performance fell below objective standards for reasonably effective representation in jury selection.

It is noted that the threshold order in this matter stated that issue #2 was ineffective assistance of appellate counsel. As petitioner notes, that was incorrect and should have read ineffective assistance of trial counsel. However, the government's response and the Court's analysis above are both accurate as applied to petitioner's trial counsel. If the petitioner cannot demonstrate any bias or prejudice on behalf of juror Gordon, trial counsel was not ineffective in the jury selection and an appellate counsel would not have been ineffective for failing to raise the issue on appeal.

  (3) Prosecutorial misconduct, plain error, in that the Prosecutor's closing arguments included instructions as to reasonable doubt; and

  (4) Denial of due process, in that opening and closing arguments were not included in the transcripts for the record of appeal.

Ground (3) and (4) are both related to counsel's arguments so the Court will address these issues together. There was no prosecution misconduct or any error in the government's closing

argument. Petitioner cites no statutory and/or case law that would require the government to refrain from stating that reasonable doubt was not, "this magnificent hurdle that the government has to overcome."

Next, that the petitioner had to inform appellate counsel that opening/closing arguments were not included in the initial transcripts that his appellate counsel received is irrelevant and not a denial of due process. First, appellate counsel had the complete transcripts prior to filing his brief and it is only speculation on the part of the Petitioner that appellate counsel failed to review the complete transcripts prior to preparing the brief. Second, petitioner cites, "see F.R.A.P. 10(e) preparation of the transcripts falls short of meeting the criteria of said rule, constituting a denial of due process." (Doc. 1, pg 25). Rule 10(e) provides guidance for correction or modification of the record and does not provide that incomplete transcripts are a denial of due process.

Therefore, there was no prosecutorial misconduct in the government's closing argument or any denial of due process in the late receipt of a portion of the trial transcript by petitioner's appellate counsel.

> (5) Ineffective assistance of counsel against Burton H. Shostak for failing to pursue a speedy trial resulting in the government filing a superseding indictment.

Petitioner made an oral motion (Doc. 130, 12-cr-40094-JPG) and filed a written *pro se* motion (Doc. 65) with regard to speedy trial. The Court struck petitioner's written *pro se* motion, but heard petitioner's oral motion. At the hearing, the Court explained to the petitioner that there was no speedy trial issue and further explained the number of days that had run prior to the hearing. Also, as noted in the government's response, petitioner informed the Court that he agreed with the continuances that were requested. Because there was no basis for a speedy trial motion, there was no basis for counsel Burton H. Shostak to pursue speedy trial and to do so would

have been frivolous.

>    (6) Ineffective assistance of counsel against Ronald E. Jenkins for actions pretrial and at trial;
>
>    (8) Ineffective assistance of counsel against Ronald E. Jenkins for failing to raise a chain of custody issue in the Motion to Suppress Evidence; and
>
>    (9) Ineffective assistance of counsel against Ronald E. Jenkins for failing to withdraw as counsel after Petitioner requested him to withdraw.

Petitioner makes numerous allegations against Mr. Jenkins including speedy trial; failing to ask witnesses questions prepared by the petitioner; failing to withdraw as counsel; failing to file pretrial motions; failing to investigate *Brady* type material; failing to strike juror Gordon; and failing to provide the petitioner with a defense.  This list is not all inclusive and some of the allegations have already been addressed.  As the government notes, there is no citation to any authority or basis for any of the allegations.

The speedy trial and juror Gordon issues have been addressed above and the Court will not repeat them here.   With regard to 404(b) evidence, the 7th Circuit has already addressed that issue and found harmless error.   As such, the Court will not again address it here.

The next issue is whether Mr. Jenkins was ineffective in his cross-examinations.  "[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy."   *Massaro v. United States*, 538 U.S. 500, 505, 123 S. Ct. 1690, 1694, 155 L. Ed. 2d 714 (2003).   "First, rights treated as personal to the accused involve a few choices made once and for all; decisions that come up frequently (such as objections to evidence) are committed to counsel, lest the trial bog down in endless warnings to the accused, followed by private consultation and choices on the record. The decision whether to cross-examine a witness, and on what subjects, therefore is exercised by counsel even though confrontation and cross-examination

are among the Constitution's express guarantees." *United States v. Boyd*, 86 F.3d 719, 724 (7th Cir. 1996).

That Mr. Jenkins failed to cross-examine some witnesses in the matter that the defendant believed he should does not demonstrate ineffective assistance of counsel. As stated above, cross-examination is exercised by counsel. Petitioner does not state the basis for the questions; what testimony counsel failed to bring forth from the witnesses; or how the petitioner was prejudice by counsel failing to ask the specific questions the petitioner wanted him to ask. Further, there is no indication within the trial transcript that the petitioner notified the court that he felt his counsel was ineffective in his cross-examination.

With regard to Mr. Jenkins failing to withdraw as counsel, the Court specifically address the issue that the petitioner wanted new counsel and upon inquiry by the Court, petitioner withdrew that request and stated to the Court that he was satisfied, "with the counsel, representation, and advice" given to him by Mr. Jenkins. The Court agrees with the Government that the petitioner can not now claim that Mr. Jenkins was ineffective for failing to withdraw.

The petitioner then goes through various portions of the trial transcript and points to incidents in which he believes Mr. Jenkins should have objected – most dealing with 404(b) evidence. Again, that issue was addressed on appeal and petitioner does not cite to any changed circumstances of fact or law. None the other incidents cited support a basis for ineffective assistance of counsel. It is a list of Monday-night quarterback calls without a single citation to any case law where a court has held that any of the incidents would indicate that counsel's performance fell below objective standards for reasonably effective representation.

Finally, the Court will address the petitioner's allegation that Mr. Jenkins was, "medicated to the point that his doctor forbid him to drive to court." At the sentencing hearing, Mr. Jenkins stated that he, "had surgery on Tuesday and have been out the balance of the week up to and including today." (Doc. 125, pg. 3). There is no mention that he was on medication and there is no indication that he wasn't properly representing the petitioner at his sentencing hearing. In fact, the transcripts indicate that he had attempted to explain the presentencing report to the petitioner and considered filing formal objections, but, "Judge, there just is not a basis to do so." He further indicates that, "The report, unfortunately, is legally accurate in that regard." Mr. Jenkins then goes on to explain and give examples to the Court on how the petitioner views certain issues. (Doc. 125, pgs 3-5). He also states that his client went through the report and made his own personal remarks – and that he discussed it with the petitioner. Petitioner acknowledged to the Court that Mr. Jenkins did indeed discuss it with him. Mr. Jenkins –although acknowledging that Petitioner's objections were not legally founded – still brought several objections before the Court by way of examples. Finally, the transcripts demonstrate that the petitioner was actually involved in addressing the Court and as such, could have raised his concern with regard to Mr. Jenkins' mental acuity at that time.

The Court is not discussing all the petitioner's allegations. To do so would be a waste of judicial resources. However, the Court has reviewed all of petitioner's claims of ineffective assistance of counsel against Mr. Jenkins and none have been found to have merit. Further, petitioner's general claim that Mr. Jenkins was, "in collusion with the government" and "helped to prosecute me" is unsupported.

> (7) Ineffective assistance of counsel against Peter Henderson, appellate counsel, for failing to raise the issues Petitioner requested be raised on appeal and proceeding with an appeal without a complete transcript.

As state above, appellate counsel had the complete transcripts prior to filing his brief and it is only speculation on the part of the Petitioner that appellate counsel failed to review the complete transcripts prior to preparing the brief. Petitioner claims that Mr. Henderson's, "errors were numerous, and his performance such that my right of effective representation was denied, as was my appeal because of his failure-refusal to do a proper job." (Doc. 2, pg. 6).

In support of his allegation, petitioner states that Mr. Henderson did not raise any of the issues preserved for appeal such as "speedy trial, process issues, the conflict between Mr. Jenkins and myself." (Doc. 1, pg. 39). He also states that Mr. Henderson failed to raise relevant conduct and criticizes the manner in which Mr. Henderson raised the Rule 404(b) issue.

"An appellate counsel's performance is deficient if he or she fails to argue an issue that is both obvious and clearly stronger than the issues raised. However, counsel is not required to raise every non-frivolous issue on appeal." *Martin v. Evans*, 384 F.3d 848, 851–52 (7th Cir. 2004). "Prejudice is established if the issue not raised 'may have resulted in a reversal of the conviction or an order for a new trial.' This means there must be a reasonable probability that the issue not raised would have altered the outcome of the appeal had it been raised." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003)(internal citations omitted).

As the government notes, Mr. Henderson prevailed on the 404(b) issue, but the Seventh Circuit held it to be harmless error. Mr. Henderson also raised an argument with regard to the alleged disparity between pseudoephedrine and methamphetamine offenses; however, that argument was rejected by the Seventh Circuit.

The other issues should not have been raised on appeal because, as earlier discussed, such arguments are without merit and Mr. Henderson was not required to raise "every non-frivolous issue on appeal." As these issues were without merit, they would not have altered the outcome of the appeal if Mr. Henderson had argued the issues on appeal. Therefore, Mr. Henderson's performance did not fall below objective standards for reasonably effective representation.

4. **Conclusion.**

Petitioner's § 2255 motion is 47 pages with an additional 107 pages of supplemental and reply documents. The Court did not discuss all of the petitioner's allegations; however, the Court has reviewed all of petitioner's claims and none have been found to have merit. Throughout all those pages, there is scant statutory and/or case law in support of his numerous allegations.

The petitioner was extremely active throughout his trial and sentencing – to include filing *pro se* motions and making his concerns know to the Court. Although he has framed the issues within his § 2255 motion in terms of trial and/or appellate ineffective assistance of counsel, it appears that petitioner's issues are that he disagrees with the law. Those disagreements do not rise to an error of constitutional or jurisdictional magnitude.

Therefore, petitioner Marty Stacy's Motion (Doc. 1) to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

5. **Certificate of Appealability.**

Having denied petitioner's motion, the Court must grant or deny a certificate of appealability. *See* Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts; 28 U.S.C. § 2253(c). Section 2253(c)(2) provides that a certificate of

appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. Mr. Stacy has made no such showing. Therefore, the Court **DENIES** a certificate of appealability. Pursuant to Rule 11(a), Mr. Stacy may not appeal the denial of a certificate of appealability, but he may seek a certificate from the Court of Appeals for the Seventh Circuit.

**IT IS SO ORDERED.**

**DATED: October 25, 2016**

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**